UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARGARET DADONE, | Case No: 1:20-cv-390 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

In May 15, 2020, Plaintiff filed suit against the Commissioner of Social Security, the Director of Ohio's Department of Medicaid ("ODM"), and the Interim Director of the Hamilton County Jobs and Family Services ("Hamilton County JFS"). Plaintiff voluntarily dismissed all claims with prejudice against ODM and Hamilton County JFS, leaving the Commissioner as the sole remaining Defendant. (Doc. 36). Currently pending is the Commissioner's motion to dismiss all claims under Rule 12(b)(6), Fed. R. Civ. P. (Doc. 25). For the reasons that follow, the undersigned recommends that the Commissioner's motion be GRANTED.

**I.  Background[1]**

The Commissioner of Social Security is responsible for administering both Title II and Title XVI of the Social Security Act ("Act"). Plaintiff is a mentally disabled individual who was entitled to receive Supplemental Security Income ("SSI") under Title XVI of the Act as a child. She began receiving SSI benefits on or about 1977. (Complaint, Doc. 1 at

---

[1] This Court's review of a motion to dismiss filed under Rule 12(b)(6), Fed. R. Civ. P. is limited to the pleadings. Therefore, solely for purposes of the pending motion, all facts alleged in the complaint are assumed to be true.

¶¶12, 26). Once she became an adult, Plaintiff qualified for Disabled Adult Child's ("DAC") benefits under Title II of the Act. (Doc. 1 at ¶¶2, 27). Title XVI of the Act permits payment of SSI benefits only if an individual's income does not exceed a specified amount; benefits paid under Title II of the Act are considered income under the SSI program. Based on the higher amount of DAC benefits to which Plaintiff became entitled, her SSI benefits were terminated in June 2014. (Doc. 1 at ¶28).

Shortly after her SSI benefits ended, Defendant Hamilton County JFS notified her that she was no longer eligible for free Medicaid for the Disabled due to excess income (the DAC benefits) unless she spent down her assets. (Doc. 1 at ¶¶29-31; *see also id*. at ¶¶3-5, 13). Plaintiff alleges that the notice was erroneous because she should have qualified for a statutory exception to the spenddown provision. (Doc. 1 at ¶3, 31). Plaintiff alleges that all three Defendants failed to give adequate notice of her continued entitlement to Medicaid under the relevant statutory provision, 42 U.S.C. § 1383c(c).

Plaintiff dismissed her first six claims, all of which were asserted against Defendants ODM and Hamilton County JFS. In her Seventh Claim for relief, Plaintiff alleges that the Commissioner of Social Security "failed to provide" information to Hamilton County JFS identifying her as an individual who had lost SSI benefits based upon her increase in or entitlement to DAC benefits. (Doc. 1 at ¶¶49-50). In her Eighth Claim, Plaintiff alleges that the Social Security Administration "has failed to take steps to ensure that ODM and Hamilton County JFS administer the Medicaid program in conformance with applicable federal laws and regulations," which in turn allegedly violates Plaintiff's rights under the Medicaid laws and the Due Process Clause of the Fifth Amendment. (Doc. 1 at ¶¶51-52). In her prayer for relief, Plaintiff seeks monetary damages, including reimbursement for expenses incurred to pay for health insurance and

other medical expenses, as well as compensation for her "mental anguish" and attorney's fees and costs.

## II. Analysis

### A. Background of SSI and Medicaid Eligibility Requirements

Under Title XIX of the Social Security Act, the federal government provides a grant to the State of Ohio to administer its Medicaid program. *See* 42 U.S.C. § 1396b. In most but not all States, an individual who is eligible to receive SSI is also eligible to receive Medicaid under the State plan. However, when the SSI program was created in 1972, Congress permitted States with existing Medicaid eligibility rules that were more restrictive than the eligibility rules for SSI to grandfather in those existing rules. The impacted States are commonly known as "209(b)" States after the original subsection of the 1972 law. *See generally,* 42 U.S.C. § 1396a(f) (current provision).[2] Ohio was a 209(b) State until August 1, 2016, at which time it amended its eligibility rules to allow all SSI beneficiaries to be entitled to Medicaid. Critically, at all relevant times at issue in the complaint, Ohio was a 209(b) State.

An individual who is receiving SSI but who has too much income to qualify for Medicaid is allowed to spend down her excess income on medical expenses in order to become eligible for Medicaid. Aware that receipt of higher DAC benefits could cause an individual who was otherwise eligible to receive SSI to become ineligible to receive Medicaid, Congress enacted a special Medicaid eligibility rule for individuals receiving DAC benefits. *See* 42 U.S.C. §1383c(c). Under that 1987 remedial statute, an individual who is receiving SSI but who "ceases to be eligible for [SSI] because of" receipt of DAC

---

[2]States that are not 209(b) States may enter into agreements known as "1634 agreements." In 1634 States, the Commissioner makes Medicaid eligibility determinations for certain SSI beneficiaries. *See* 42 U.S.C. § 1383c(a); *see also* 20 C.F.R. § 416.2116.

3

benefits "shall be treated for purposes of subchapter XIX as receiving [SSI] so long as …she would be eligible for [SSI] in the absence of" the DAC benefits. *Id*. In this lawsuit, Plaintiff argues that the Commissioner had a duty to provide notice that she alleges would have ensured that she remained entitled to continue her Medicaid benefits under 42 U.S.C. § 1383c(c), even after receipt of DAC benefits, without a spenddown requirement. (Doc. 1 at ¶3).

### B. Whether the Commissioner Has a Statutory or Regulatory Duty

In her claim against the Commissioner, Plaintiff specifically alleges that the Defendant failed to notify ODM and Hamilton County of Plaintiff's "status as a DAC beneficiary and the effect of that status" which "omission contributed to the state and local governments' failure to determine that Ms. Dadone was entitled to Medicaid coverage without a spenddown…." (Doc. 41 at 5).[3]  Plaintiff's theory of liability against the Commissioner therefore is built upon the premise that the Defendant had a legal duty to notify ODM, Hamilton County JFS, and possibly Plaintiff herself of her continued eligibility for Medicaid under the remedial statute. Alternatively, Plaintiff suggests that the Commissioner had some form of supervisory or oversight duty to ensure that ODM and Hamilton County JFS provided her with proper notification under § 1383c(c).

The Commissioner persuasively argues that no such legal duty existed in 2014, in part because Ohio was a 209(b) State at that time. Unlike in other statutory provisions,[4] Congress chose not to include any express language in § 1383c(c) that would impose a

---

[3]Plaintiff's claim against the Commissioner stands in contrast to a dismissed claim against ODM that alleged that the Commissioner did "routinely" send ODM information "identifying individuals who have lost SSI benefits because of entitlement to an increase in DAC benefits" but that ODM failed to act on that information. (Doc. 1 at ¶37).
[4]For example, the Commissioner admits it has a statutory duty to provide notification to States of a group of disabled widows and widowers whose eligibility was affected by an actuarial change. *See, e.g.*, 42 U.S.C. §1383c(b).

4

duty on the Commissioner. Nor does Plaintiff's complaint identify any other statute that would impose a legal duty on the Commissioner to notify either ODM or Hamilton County JFS when an individual may qualify to continue receiving Medicaid benefits under §1383c(c).[5] In the absence of some legally enforceable duty, Plaintiff has failed to state any viable claim against the Commissioner.

In her response, Plaintiff concedes that Congress has "fail[ed] to expressly place a duty on SSA." (Doc. 41 at 7). However, Plaintiff argues that the Commissioner still should be held liable because it voluntarily "assumed" a duty to notify when it amended its own internal Program Operations Manual System ("POMS"). (Doc. 41 at 2, 9). Plaintiff points to a POMS provision that was added by SSA in 1988, approximately a year after Congress enacted the remedial statute. The referenced text states that SSA "notifies the *1634 States* about members of *this group*" – an allusion to the group of individuals like Plaintiff who become DAC beneficiaries eligible for continuation of Medicaid benefits under the remedial statute, § 1383c(c). (*See* Doc. 41-4 at 4, POMS SI 01715.015 (B)(4)) (emphasis added). However, the express language of the POMS provision refers only to SSA's notification to "the 1634 States" and is silent with respect to any similar notification to 209(b) States. Therefore, even assuming that the POMS provision creates a legal duty that would support a private right of action by an individual DAC beneficiary in an affected 1634 State,[6] the same POMS provision cannot be read to support any similar duty to

---

[5] Although the complaint includes references to other provisions, none support imposing a legal duty on the Commissioner to notify the state or county of § 1383c(c) eligibility, or to supervise State or county notification. *See, e.g.*, 42 U.S.C. § 1306 (establishing the Medicaid and CHIP Payment and Access Commission ("MACPAC"), an advisory body of which the Commissioner is not a member).

[6] The undersigned finds no need to consider this issue beyond the realm of theoretical possibility. *But see Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir. 1989) (stating that "the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law….").

notify 209(b) States, much less a duty to notify a DAC beneficiary residing in a 209(b) State.

Plaintiff also refers briefly to a 1989 Department of Health and Human Services Medicaid Operations Letter. Although Plaintiff fails to provide a valid citation or copy of the text, Plaintiff asserts that Letter 89-55 generally informed the States that "SSA would identify persons eligible for Medicaid under… § 1383c(c)." (Doc. 41 at 7). In a policy argument, Plaintiff argues that unless the Commissioner takes on this duty, "[t]here is currently no other way for the state agencies to obtain the identity of these [DAC] beneficiaries and the significance of the beneficiaries' status in a systematic manner," without which the remedial statute is less effective. Plaintiff's policy argument is unconvincing because it is not the province of this Court to make law, but to interpret it. It is telling that despite the passage of more than three decades since the 1989 Operations Letter, Plaintiff can cite to no authority that supports the imposition of a legal duty on the Commissioner based upon Letter 89-55.

Last, Plaintiff alludes to two class action lawsuits settled in New York and in West Virginia as support for the imposition of a legal duty of notification or oversight on the Commissioner. Aside from the obvious fact that Plaintiff is not a party to the referenced class actions, neither authority is persuasive for the proposition cited. Plaintiff fails to provide a citation to the West Virginia suit but appears to be referring to *Carter et al. v. Willis-Miller*, Case No. 1:91-cv-01240 (W.D. Va.), a case that did not involve the Commissioner or any federal defendant. With respect to the New York lawsuit, Plaintiff asserts that the terms of settlement "judicially imposed" an "obligation" on the Commissioner to notify New York of DAC beneficiaries' status. However, the language of the Stipulation and Order attached as an exhibit to Plaintiff's response reflects no such

6

federal obligation. Rather, the agreement merely observes that the Secretary of Health & Human Services had already provided information about potential class members to New York in 1992, and required the Secretary (through the Centers for Medicare and Medicaid Services), to update State Medicare Manual instructions "to address the obligations of the State Medicaid Agencies…" (Doc. 41-2, *McMahon v. Dowling*, Case No. 91-621C, Stipulation and Order at 3) (emphasis added).

### C. Whether the Commissioner Has a Procedural Due Process Duty

Plaintiff's attempt to state a procedural due process claim similarly fails to state any claim against the Commissioner as a matter of law. To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiff must prove: (1) that she had a constitutionally protected property interest; (2) that she was deprived of her protected interest by the defendant; and (3) that the defendant governmental agency did not afford her adequate procedural rights before depriving her of her property interest. *Daily Serv LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

Here, Plaintiff alleges that she had a property interest in the continuation of Medicaid benefits, and that she was deprived of that interest without sufficient notice of her entitlement to continued benefits under § 1383c(c). However, Plaintiff clearly alleges that Hamilton County JFS provided her with a notice concerning the cut-off of her state Medicaid benefits. While Plaintiff complains that the County incorrectly stated that she was ineligible to continue benefits without a spenddown, she fails to provide any rational basis for attributing the County's erroneous notice to the federal Defendant. Plaintiff cites to no authority to suggest that the Defendant Commissioner was constitutionally required to supervise Ohio or Hamilton County JFS in their administration of Ohio's Medicaid program. In sum, Plaintiff's contention that "SSA did not meet its obligation to notify the

7

state of her status as a DAC beneficiary and did not notify the state or Ms. Dadone of the significance of that status," *see* (Doc. 41 at 8), is not persuasive because the Defendant Commissioner had no such obligation.  Instead, it is Ohio and/or Hamilton County JFS that administer the Medicaid benefits to which Plaintiff claims she was entitled, and it is the State and/or County agencies (and not the Defendant Commissioner) that allegedly deprived Plaintiff of any process to which she was due.[7]  Therefore, Plaintiff fails to state a due process claim against the Commissioner.

### D. The Commissioner's Entitlement to Sovereign Immunity

Last but not least, Plaintiff seeks recovery of monetary damages, attorney's fees and costs. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "This principle extends to agencies of the United States as well, which are immune absent a showing of a waiver of sovereign immunity." *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (additional citation omitted).  Here, Plaintiff does not argue that the Commissioner has expressly or even impliedly waived its sovereign immunity against such claims. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.").  Instead, Plaintiff simply asks for the opportunity "to proceed through discovery to determine why the Commissioner has been unable to devise a system that effectively fulfills its obligation to implement a remedial statute." (Doc. 41 at 9).

---

[7] Apart from the inappropriate blending of distinct governmental entities, Plaintiff also fails to allege whether she exercised her right to administrative review of ODM and/or HCJFS's determination that she was ineligible for continuation of Medicaid benefits without a spenddown, or whether she sought any other form of redress prior to filing this lawsuit.  In her response, Plaintiff concedes that she did not question the County's notice, and did not exercise any available procedural due process rights. (Doc. 41 at 5).

Again, the undersigned rejects Plaintiff's request because the Commissioner has no such legal obligation. The undersigned understands that Plaintiff firmly believes that the remedial statute would be more effective, and that beneficiaries like her would avoid the harm she alleges that she endured, if only the Commissioner were to play an "essential role in the implementation of [§1383c(c)]." (Doc. 41 at 10). However, Congress chose not to assign any notification or oversight duties to the Commissioner when it enacted the remedial statute and the Commissioner remains entitled to sovereign immunity.

### III.     Conclusion and Recommendation

For the reasons discussed, **IT IS RECOMMENDED THAT** the Defendant Commissioner's motion to dismiss (Doc. 25) be **GRANTED** and that all remaining claims against the Commissioner be dismissed for failure to state a claim.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARGARET DADONE,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, et al.

        Defendants.

Case No: 1:20-cv-390

McFarland, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).